UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-2080(DSD/SRN)

Lydia C. Henry, on behalf of herself and others similarly situated,

Plaintiff,

v.

**ORDER**

Cora McCorvey in her official capacity as Executive Director of the Minneapolis Public Housing Authority; and the Minneapolis Public Housing Authority, in and for the City of Minneapolis, a public body corporate and politic,

Defendants.

Gregory J. Marita, Esq., Legal Aid Society, Northside Office, 1206 42nd Avenue North, Minneapolis, MN 55412 and Dorinda L. Wider, Esq., Legal Aid Society of Minneapolis, 430 1st Avenue North, Suite 300, Minneapolis, MN 55401, counsel for plaintiff.

Carol A. Kubic, Esq., Kenneth Parsons,, Esq., Minneapolis Public Housing Authority, 1001 Washington Avenue North, Minneapolis, MN 55401, counsel for defendants.

This matter is before the court upon plaintiff's motion for class certification and defendants' motion for summary judgment. For the reasons stated, plaintiff's motion is denied and defendants' motion is granted.

JAN 31 2003
FILED ____________
Richard D. Sletten, CLERK
Judgment Ent'd. JAN 31 2003
Deputy Clerk's Initials ______

## BACKGROUND

### I. Plaintiff's Dealings with MPHA

Plaintiff has rented and lived in an apartment owned by the Minneapolis Public Housing Authority ("MPHA") since October 1994. MPHA owns, manages and rents approximately 5,700 rental units for low-income families. When plaintiff began renting from MPHA, rent was charged as a calculated percentage of annual income for most MPHA tenants, including plaintiff. However, there was no minimum rental amount required at that time. If a renter became unemployed, he or she would be charged no rent. That was the case when, in 1995, plaintiff lost her job. As part of the Balanced Budget Downpayment Act of 1996, Congress required that all public housing tenants pay a minimum monthly rent of $25, regardless their level of income. Pub. L. No. 104-99, Title IV, § 402(a), 110 Stat. 40. Thus, MPHA began charging plaintiff rent of $25 per month until May 1997, when plaintiff regained employment. Her rent then returned to the percentage of annual income formula. When plaintiff again lost her job in December of that year, her rent was reduced to $25. When she became employed the following April, her rent was again raised to a percentage of her income.

In October 1998, Congress passed the Quality Housing and Work Responsibility Act of 1998, Pub. L. No. 105-276, Title V, § 507(a), 112 Stat. 2524 ("QHWRA"). QHWRA permits public housing authorities to charge qualifying tenants minimum rent of $0 to $50 per month.

42 U.S.C. § 1437a(a)(3)(A). However, it also created an exemption from the requirement of minimum rent for tenants suffering certain enumerated hardships. 42 U.S.C. § 1437a(a)(3)(B).

Plaintiff became unemployed again in March 2001. However, she was already delinquent in payments for February and March. As a result of losing her job, plaintiff's rent was again reduced to $25 per month. She remained delinquent in amounts from February and March that were based on the percent of annual income formula. Plaintiff also failed to make her April payment. Defendants claim that MPHA then sent plaintiff notice of its intent to terminate her lease for non-payment of rent, along with a letter informing her of the availability of hardship exemptions from the minimum rent requirement.[1] On approximately April 30, 2001, plaintiff spoke with an MPHA employee regarding her delinquency and inability to pay even minimum rent. Defendants claim plaintiff was instructed to contact the property manager for her building to obtain an exemption form.[2] Plaintiff did not submit an exemption request form at that time.

---

[1] In her class certification brief, plaintiff contends that she received the termination notice but did not receive notice regarding the availability of hardship exemptions. [Pl.'s Mem. in Supp. of Class Certification at 12.]

[2] Plaintiff disputes that she was informed of the hardship exemption by MPHA personnel. [Pl.'s Mem. in Supp. of Class Certification at 12.]

Plaintiff again failed to make the minimum rental payments in May and June 2001. In response, MPHA sent plaintiff a second notice of lease termination. Defendants again claim that a copy of the letter informing her about the availability of hardship exemptions was included.[3] When plaintiff failed to respond to the termination of lease notice, MPHA brought an eviction action in Hennepin County Housing Court. Plaintiff's counsel informed MPHA and the housing court that plaintiff intended to seek a hardship exemption and the eviction action was removed from the housing court calendar.

Plaintiff submitted the hardship exemption application in August 2001. Defendants contend that, due to an administrative error, plaintiff's application was misplaced and no action was taken. Therefore, in September 2001, MPHA sent plaintiff a third notice of termination of lease for non-payment of rent. The parties agree that a notice of availability of hardship exemptions was included with this correspondence.

In mid-September 2001, plaintiff again became employed. As a result, her rent was recalculated and increased to $312 per month, effective December 1, 2001. In the meantime, plaintiff made a $25 payment on October 1, 2001, which MPHA applied to plaintiff's

[3] Plaintiff again contends that she did not receive notice regarding the availability of hardship exemptions with this notice of termination for non-payment of rent. [Pl.'s Mem. in Supp. of Class Certification at 12.]

delinquent balance from March 2001. In November, 2001, plaintiff again paid $25, which was also applied to the delinquent calculated rent amount from the previous March.[4]

In February 2002, MPHA granted plaintiff's application for a hardship exemption for the period from April through November 2001. As a result, plaintiff was not required to make minimum payments for those months. Plaintiff did pay the balance of the delinquent calculated rent from March 2001.

**II. Other MPHA Actions**

After the QHWRA took effect in October 1998, MPHA imposed a four month moratorium on issuing notices of lease termination and filing evictions for non-payment of rent. The purpose of the moratorium was to allow MPHA personnel to implement procedures pursuant to QHWRA. In January 1999, MPHA sent a mass mailing to all tenants who were currently qualified for minimum rent.[5] The mailing informed tenants of the availability of an exemption from minimum rent in certain hardship cases. Because plaintiff was not

[4] While plaintiff's complaint alleges that she paid $50 in each of the months of October and November, 2001, her declaration states that she paid $25 in each of those months. [Pl.'s Decl. at ¶¶ 29, 34-35.]

[5] A copy of a letter under the MPHA letterhead and dated January 8, 1998 has been submitted with defendants' brief and affidavit. The parties refer repeatedly to the January 8, 1999 letter. Presumably, the letter dated January 8, 1998 is, in fact, the 1999 letter, containing a typographical error.

eligible for minimum rent in January 1999, she was not targeted for that mailing.

In March 1999, after the United States Department of Housing and Urban Development ("HUD") issued an initial guidance on QHWRA (see 64 Fed. Reg. 8192 (Feb. 18, 1999)), MPHA resumed issuing notices of lease termination for non-payment of rent in appropriate cases. MPHA included notice of the availability of hardship exemptions from the minimum rent requirement with each notice of termination for non-payment of rent.[6] In March 2000, HUD issued a final rule regarding the hardship exemption. See 24 C.F.R. § 5.630(b).

In June 1999, MPHA did a second mass mailing of notices informing all of the 799 tenants then qualifying for minimum rent of the availability of hardship exemptions. MPHA also continued its policy of including notice of the hardship exemption with every notice of termination for non-payment of rent. Again, because plaintiff was not qualified for minimum rent in June 1999, she was not included in that mailing.

---

[6] Plaintiff disputes whether defendants actually followed this practice, alleging that when she received notices of termination of lease for non-payment of rent in April and June 2001, no notice was included. [Pl.'s Mem. in Supp. of Class Certification at 12.] However, in deposition, plaintiff repeatedly indicated that she could not recall whether or not she received the notices of hardship exemption and that it is possible that she did. [Henry Dep. at 99, 132-33, 135.]

In October 2001, MPHA determined that it had failed to follow an internal policy requiring an executive review of tenant files prior to the filing of eviction actions for non-payment of rent. As a result, MPHA imposed a second moratorium on the enforcement of minimum rent requirements, on the issuance of notices of termination for failure to pay minimum rent and on the filing of eviction actions. MPHA discontinued any efforts to collect delinquent minimum rent payments other than sending monthly rent statements. MPHA also petitioned the housing court to expunge the eviction actions that had proceeded without executive review and credited any eviction charges to the appropriate tenants' accounts. Also in October 2001, MPHA sent a third mass mailing to the approximately 758 tenants then qualified for minimum rent. Plaintiff acknowledges receiving the October notification regarding hardship exemptions.

In December 2001, MPHA began issuing the notice of hardship exemption from payment of minimum rent to every new renter and to every renter qualifying for the minimum rent program. In April 2002, MPHA began including a lease addendum that included the exemption notice whenever a tenant's rent rate changed. Finally, in that same month, MPHA began sending monthly rent statements and rent reminders, both of which incorporated the notice of hardship exemption, to all MPHA renters.

**III. MPHA Minimum Rent Procedures**

Since QHWRA established the hardship exemption, MPHA has required tenants seeking an exemption to complete and submit a hardship exemption application form. Under MPHA practices, once the tenant has submitted the application and during the pendency of its determination of eligibility for the exemption, MPHA ceases charging the applicant minimum rent. If MPHA determines that the applicant qualifies for the exemption, no rent will be charged until the tenant's circumstances change and he or she no longer qualifies. If the tenant does not qualify, he or she will be retroactively charged minimum rent for the excluded period. If MPHA determines that the tenant is qualified for a period of ninety days or less, the tenant will be required to pay back rent at the minimum rate, but MPHA must develop a repayment plan with the tenant. If the hardship is expected to last over ninety days, MPHA must waive rent for the duration of the qualifying hardship.[7]

**IV. Plaintiff's Application for Hardship Exemption**

Although plaintiff applied for a hardship exemption from minimum rent in August 2001, MPHA failed to take action on the request until October 2001. MPHA continued to charge plaintiff minimum rent in August, September and October 2001, despite its policy of suspending minimum rent during the pendency of hardship

---

[7] These procedures are required under the regulations. 24 C.F.R. § 5.630(b).

exemption applications.[8] Plaintiff made payments of $25 in both October and November, which were credited to her delinquent calculated rent from March 2001. It is not entirely clear from the record, but it appears that once MPHA located and began processing plaintiff's hardship exemption application, it stopped charging her minimum rent in accordance with its policy. MPHA approved plaintiff's application in February 2002. After determining that plaintiff's hardship lasted over 90 days, MPHA credited her account for all unpaid minimum rent charges for the period from March to November 2001.

## DISCUSSION

### I. Plaintiff's Claims

Plaintiff's action seeks declaratory and injunctive relief for and from alleged violations of: 1) the Fifth and Fourteenth Amendments of the United States Constitution, 2) 42 U.S.C. § 1437a(a)(3)(B), 3) 24 C.F.R. § 5.630 and, 4) breach of the terms of lease agreements. Plaintiff asks that the court declare defendants' methods of notifying renters of potential eligibility for hardship exemptions, defendants' policy of applying minimum rent prior to determining eligibility for the hardship exemption, defendants' policy of sending notices of termination of lease for

---

[8] According to defendants, the processing delay was caused by a clerical error. [Boler Aff. at ¶ 29.]

non-payment of minimum rent prior to determining eligibility for the hardship exemption and defendants' policy of initiating eviction actions for non-payment of minimum rent prior to determining eligibility for the hardship exemption all to be in violation of the cited constitutional amendments, statutes, regulations and common law rights.

In short, plaintiff asks the court to declare that the Constitution, the QHWRA and the regulations promulgated thereunder all require that the MPHA determine a tenant's eligibility for an exemption from the minimum rent requirements of the QHWRA before it takes any action to collect minimum rent from tenants.

Plaintiff also seeks preliminary and permanent injunctive relief giving effect to her interpretation of these constitutional, statutory, regulatory and common law requirements.[9]

---

[9]Plaintiff seeks the following injunctive relief ordering that defendants:

> a. Withdraw in writing all pending Notices of Termination for nonpayment of rent where minimum rent is a part of the allegedly unpaid rent;
> b. Suspend issuances of Notices of Termination for nonpayment if minimum rent unless and until such time as members of the class are adequately informed of financial hardship exemptions;
> c. Notify all members of the plaintiff class of the financial hardship exemptions in writing at the time they are determined to be minimum rent tenants, at each time they are billed for minimum rent, and at the time they are sent a Notice of Termination of tenancy

(continued...)

[9](...continued)

for nonpayment of rent, and that they may request an exemption;

d. Cease application or billing of minimum rent charges to any rental account until the financial hardship situation is determined to be temporary or long-term;

e. Adopt written, objective standards and procedures for determining all financial hardship exemptions from application of minimum rent;

f. Adopt written, objective standards and procedures making repayment agreements available to residents whose financial hardships are determined to be temporary, and for canceling minimum rent charges for those experiencing long-term hardships;

g. Adopt written, objective standards and procedures for informing minimum rent residents in writing of each of the MPHA's decisions and informing them of their right to grieve the decision;

h. Identify members of the plaintiff class entitled to a temporary or long-term exemption from application of minimum rent who have moved since October 21, 1998, and offer them immediate reinstatement to a public housing tenancy as a unit becomes available, prior to admission of other persons, and removing eviction charges, if any, from their accounts;

i. Cease all collection actions based on nonpayment of rent, including written or oral demands or inquiries seeking payment from class members;

j. Identify members of the plaintiff class entitled to a long-term exemption from application of minimum rent since October 21, 1998, and **refund** to each class member all minimum rent charges collected from them, together with prejudgment interest, or remove unpaid charges from their account; and

k. Cease filing of eviction actions for nonpayment of rent in cases in which nonpayment of any rent charged as minimum rent is alleged as a ground for relief until the

(continued...)

Plaintiff brings the action on behalf of a putative class of like-situated tenants of MPHA and now moves for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2). For the reasons set forth below, plaintiff's motion for class certification is denied.

**II. Plaintiff's Motion for Class Certification**

Rule 23 of the Federal Rules of Civil Procedure sets forth a two-part analysis to determine whether class certification is appropriate. Plaintiffs must first satisfy all four requirements of Fed. R. Civ. P. 23(a), showing that: (1) joinder of all members is impractical because the class is too numerous (numerosity), (2) there are questions of fact or law that are common to the class (commonality), (3) the claims or defenses raised by the representative parties are typical of those of the class (typicality), and (4) the representative parties will protect the interests of the class fairly and adequately (adequacy). See Donaldson v. Pillsbury Co., 554 F.2d 825, 829 (8th Cir. 1977).

If all four elements of Fed. R. Civ. P. 23(a) are met, the court must then determine if at least one of the three subdivisions of Rule 23(b) is also met. See Eisen v. Carlisle & Jaquelin, 417 U.S. 156, 163 (1974). Rule 23(b) permits class certification if

---

[9](...continued)
steps in subparagraphs a. through j. have been completed.

(1) proceeding with separate actions would create a risk of inconsistent outcomes or a practical disposition of the interests of others not parties to the actions, (2) the party opposing certification has acted such that relief with respect to the class as a whole is appropriate, or (3) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(1)-(3). Plaintiffs bring their motion pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

However, before applying the requirements of Rule 23(a) and 23(b)(2), the court must consider two other questions. First, as a matter of justiciability, before the court can confer representative standing upon plaintiff, it must confirm that the plaintiff has individual standing to bring the action. Second, even if a plaintiff has individual standing and the requirements of Rule 23 are met, the court must determine whether class certification is necessary to vindicate the rights of the unnamed class members.

**A. Standing**

Defendants challenge plaintiff's standing to bring the present law suit. In order to have standing to bring an action in the federal district court, plaintiff must demonstrate that she has

been injured, that defendants caused her injury and that her injury is such that the court can afford redress. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Wilcox Elec., Inc., 119 F.3d 724, 727 (8th Cir. 1997). "Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littlejohn, 414 U.S. 488, 494 (1974).

First, defendants contend that plaintiff suffered no cognizable harm as a result of MPHA action. Defendants point out that plaintiff was not evicted, the record of the scheduled eviction hearing was expunged and once it had determined her eligibility for the hardship exemption, plaintiff's account was credited for past due minimum payments. Therefore, defendants argue, plaintiff "has not been harmed in any way." [Defs.' Mem. in Opp'n to Class Certification at 10.] However, defendants' argument fails to account for the alleged injury to plaintiff's constitutional interest. If, as plaintiff alleges, she has a constitutionally guaranteed due process right to adequate notice of the hardship exemption and defendants violated that right, or she has a statutory right to an MPHA determination of eligibility for exemption even absent a request and defendants ignored that right,

she has been sufficiently injured to have standing before the court. See Campbell v. Minneapolis Public Housing Authority, 168 F.3d 1069, 1073-74 (8th Cir. 1999).

Second, defendants argue that plaintiff fails to show how the court can offer redress for her injuries because they are already taking the very actions she asks the court to order. However, defendants mischaracterize either plaintiff's demand for relief or their own remedial actions. While defendants have put in place a number of procedures like those sought by plaintiff, an important exception exists regarding defendants' interpretation of the QHWRA. Plaintiff asks the court to join her in interpreting the statute to compel MPHA to automatically stay any attempt to charge or collect minimum rent pending a determination of eligibility for the hardship exemption, even absent a request from the tenant. Defendants, however, read the statute to require no action on their part unless and until a tenant files a request for a hardship exemption. The fact that defendants have changed some behaviors does not put plaintiff's claims beyond redress, nor does it divest her of standing.

While failing to defeat plaintiff's standing, defendants' arguments raise the related question of mootness. The doctrine of mootness generally requires that plaintiff's cause of action continue "throughout the entire litigation process." See 7B Wright et. al., Fed. Practice and Procedure Civ.2d § 1785.1 (2002 update).

"If, during the course of ... litigation, plaintiff's grievance has been rectified or if plaintiff no longer is subject to the challenged conduct of defendant, then typically his claim will be deemed moot and the action dismissed." Id. Defendants might reasonably have made such a claim here, rather than in relation to Rule 23 typicality. See Fed. R. Civ. P. 23(a)(3).

However, courts recognize at least two exceptions to the mootness doctrine, either of which might apply in this case. First, if the matter is such that purportedly wrongful conduct can be repeated while escaping judicial review, the mootness doctrine generally does not apply. See Weinstein v. Bradford, 423 U.S. 147, 149 (1975); Hickman v. Missouri, 144 F.3d 1141, 1142-43 (8th Cir. 1998). This narrow exception applies when the duration of defendant's conduct is too short to permit meaningful judicial review and yet the conduct is reasonably likely to be repeated. See Hickman, 144 F.3d at 1142-43. Plaintiff points out that her history and circumstances make it likely that she will qualify for minimum rent again at some point in the future. She suggests that defendants could then grant a hardship exemption to her while continuing to ignore the constitutional, statutory and regulatory requirements in the case of other tenants, thus repeating the violation while avoiding judicial review.

Second, in the class action context, where the claims of a named plaintiff become moot, a controversy may still exist between

the defendant and unnamed plaintiffs. See e.g., Sosna v. Iowa, 419 U.S. 393, 398-99 (1975)(noting that while the waiting period under a state residency requirement had expired as to the named plaintiff rendering her claim moot, the controversy remained live as to some members of the putative class). Arguably, that is the case here. In some circumstances, the Supreme Court has held that for the controversy to remain live as to unnamed class members, the district court must have certified the class before the named plaintiff's action became moot. See Board of School Commissioners of City of Indianapolis v. Jacobs, 420 U.S. 128, 130 (1975). In other instances, the Court has recognized a "relation back" to the date the action was filed, permitting the case to continue even though the named plaintiff's claims became moot before the court had certified the class. See Sosna, 419 U.S. at 402 n. 11. However, the court need not resolve that question in the present case, because it finds that class certification is unnecessary and therefore inappropriate.

**B. Necessity of Class Action**

Even where the court has jurisdiction and an action is deemed justifiable, as a procedural matter, the court must consider whether class certification is necessary to vindicate the rights of the unnamed class members. See Irke v. Northern States Power Co., 459 F.2d 566, 572 (8th Cir. 1972)(rehearing and rehearing en banc denied)(vacated on other grounds, 409 U.S. 815 (1972)). In that

case, the Eighth Circuit Court of Appeals was asked to declare the service termination policies of a state-regulated gas and electricity company unconstitutional. **See id.** at 567. The court ruled that if the district court can determine the constitutionality and legitimacy of statutes, rules and regulations regardless of whether the action is treated as an individual action or a class action, "[n]o useful purpose would be served by permitting [the] case to proceed as a class action." Id. at 572.

Following Irke, the federal district court in Minnesota noted that even when plaintiffs otherwise satisfy all the requirements for class certification, if the requested relief would inure to the benefit of all class members without class certification, "no useful purpose for proceeding as a class appears." Nelson v. Likins, 389 F. Supp. 1234, 1239 (D. Minn. 1974). See also Bennett v. Butz, 386 F. Supp. 1059, 1062 n. 1 (D. Minn. 1974)(holding same).[10]

---

[10] The cases cited were similar to the present action in several respects. In Irke, plaintiffs asked the court to impose due process notice and hearing requirements on a state-regulated utility company when it intended to terminate service for non-payment. See Irke, 459 F.2d at 567-68. In Nelson, recipients of public assistance challenged the constitutionality of the methods by which state officials administered the federally funded program. See Nelson, 389 F. Supp. at 1236. As here, plaintiffs alleged that the administrators' process violated both the constitution and the statute under which the program was administered. See id. at 1236-37. In Bennett, plaintiffs sought an injunction forcing the Secretary of Agriculture to expend a surplus in the food stamp program budget in order to effectuate the will of Congress in allocating the funds. See Bennett, 389 F. Supp. at 1620-63.

As was the case in Irke, Nelson and Bennett, plaintiff asks the court to apply the law to the practices of the MPHA, declare those practices unlawful and prescribe by injunction the manner in which the MPHA must proceed within the law. Such relief, if granted on behalf of plaintiff, together with the other specific demands set forth in her complaint, would equally benefit all past, present and future MPHA tenants--the entire putative class. Because an outcome favorable to plaintiff individually would equally benefit all other class members even without class certification, the court finds class certification unnecessary.[11] Therefore, plaintiff's motion for class certification is denied.

**III. Defendants' Motion for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v.

[11] While the cited cases did not directly so hold, the analysis of the necessity of class action could also be considered under the "superior to other available methods" requirement of Rule 23, which would lead to the same result. Fed. R. Civ. P. 23(b)(3).

Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**A. Plaintiff's Rule 56(f) Defense**

Plaintiff moves that the court delay consideration of defendants' summary judgment motion because discovery is incomplete. In his pretrial order, Magistrate Judge John M. Mason stated that, "[i]t is to be expected that discovery will mostly relate to class action issues." [Doc. Nos. 7-8.] The magistrate judge apparently planned to set a schedule for further discovery after the question of class certification was resolved.

Plaintiff also points to Eighth Circuit cases finding summary judgment inappropriate following only limited discovery. See TMJ Implants Prod. Liab. Litig. v. Dow Chem., 133 F.3d 1484 (8th Cir. 1997)(noting this principle generally but allowing summary judgment motion to proceed because it the was non-moving party that had sought to limit discovery); Guite v. Wright, 976 F. Supp. 866 (D. Minn. 1997)(allowing summary judgment to proceed only as to issues covered in limited prior discovery where court, not parties, had so limited discovery). Plaintiff likens the present case to Guite, arguing that Magistrate Judge Mason forced her to limit discovery to issues relating to class certification. Plaintiff contends, therefore, that she cannot fully and fairly respond to defendants' assertion that there are no issues of material fact in dispute.

Plaintiff lists several areas of inquiry she has not yet pursued that she claims might yield significant factual controversy.[12] The court also notes the existence of some controverted facts within the pleadings and memoranda presently before it.[13] However, the mere existence of disputed facts does not

---

[12] These include factual elements of defendants' answer and affirmative defenses, defendants' actual practices and procedures in determining exemption status and the English language proficiency of MPHA tenants. [Pl.'s Mem. in Opp'n to Summ. J. at 5.]

[13] These include, *inter alia*, whether plaintiff paid $25 or $50 in October and November 2001 and whether notices regarding the hardship exemption were included in several correspondences sent by defendants to plaintiff. See supra, pp. 6-7 and notes 1-4 and 6;
(continued...)

suffice to defeat a motion for summary judgment. Anderson, 477 U.S. at 247-48. Disputed facts must be material and their existence shown by more than a scintilla of evidence. See American Airlines v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 110-11 (8th Cir. 1997). Parties cannot "fashion a dispute of material fact solely to impede a lawful exercise of granting of summary judgment." Id. at 111.

Viewing the matter in the light most favorable to plaintiff, the court concludes that only two questions are presented by the lawsuit and that both may be answered as a matter of law. The first question is whether the QHWRA and its regulations require MPHA to grant hardship exemptions in the absence of a request from the tenant. The second question is to what degree, if any, the availability of hardship exemptions implicates Fifth and Fourteenth Amendment due process.

**B. The Statute and Regulations**

The gravamen of plaintiff's statutory and regulatory claim is that QHWRA and its regulations require defendants to determine a tenant's eligibility for the hardship waiver *before* charging that tenant minimum rent, sending that tenant notice of termination for non-payment of rent or bringing an eviction action for non-payment of rent, *even if the tenant never requests a hardship exemption.*

---

[13] (...continued)
infra, pp. 28-31.

Plaintiff bases her claim on a direct, albeit truncated, reading of the statute. QHWRA states, in part: "... a public housing agency ... shall immediately grant an exemption from application of the minimum monthly rental ... to any family unable to pay such amount because of financial hardship, which shall include ...." 42 U.S.C. § 1437a(a)(3)(B)(i). The subsection then lists several hardships for which an exemption must be granted.[14] Plaintiff points to the imperative "shall immediately grant" and the absence of specific language requiring that tenants apply for the exemption to support her interpretation.

Plaintiff reads the regulation implementing HUD policy under the QHWRA in a similar fashion. The regulation nearly parrots the statute, stating "[t]he responsible agency must grant an exemption ... if the family is unable to pay the minimum rent because of financial hardship. ..." 24 C.F.R. § 5.630(b)(1). The regulation lists substantially the same qualifying hardships that are identified in the statute. 24 C.F.R. § 5.630(b)(1). The court cannot, however, agree with plaintiff's reading of the statute and regulation. Immediately following the subsection cited by plaintiff, the statute describes the process by which hardship

---

[14] The statute includes inability to pay due to: (1) lost eligibility or awaiting a determination of eligibility for a federal, state or local assistance program, (2) pending eviction due to inability to pay minimum rent, (3) loss of income due to changed family circumstance, including loss of employment, (4) death in the family, and (5) other situations as determined by the agency. 42 U.S.C. cs 1437a(a)(3)(B)(i).

exemptions are to be considered. 42 U.S.C. § 1437(a)(3)(B)(ii). The paragraph describes the action to be taken by the agency following a determination that a hardship is either temporary or long-term. In so doing, that statute makes it clear that Congress envisioned tenants applying for exemptions. The subsection begins, "[i]f a resident requests a hardship exemption under this subparagraph ... and the public housing agency reasonably determines the hardship to be of a temporary nature ...." 42 U.S.C. § 1437(a)(3)(B)(ii). Yet the statute does not inform agencies how to apply the temporary versus long-term hardship distinction *in the absence of a request*. It is clear, therefore, that Congress never envisioned such a circumstance.

It is axiomatic that courts are to read and interpret statutes as a whole and in context, giving words and phrases their plain meaning. See State Highway Commission of Missouri v. Volpe, 479 F.2d 1099, 1111-12 (8th Cir. 1973). Whenever possible, the court must interpret statutes in a manner that gives effect to all their terms so that none is rendered meaningless. See U.S. v. Days Inns of America, Inc., 151 F.3d 822, 825 (8th Cir. 1998). To read QHWRA as plaintiff suggests would render the temporary versus long-term distinction set out in subsection (B)(ii) meaningless in cases where a qualifying tenant did not request a hardship exemption.

Common sense leads to the same conclusion. Plaintiff's interpretation of the statute and regulation seems, on the one

hand, to ask too much of an agency charged with managing the accounts of thousands of tenants whose personal and financial circumstances are often changing, and on the other hand, to ask too little of the tenants themselves, when they are intimately familiar with their personal situations. Additionally, because the submission of an application triggers a stay of all collection activities, the delay inherent in the application process does not unduly impose a hardship on applicants. 24 C.F.R. § 5.630(b)(2)(ii)(C). For these reasons, the court finds as a matter of law that the QHWRA and regulations promulgated thereunder do not require MPHA to determine hardship exemption eligibility absent a request from the tenant.

**C. Due Process Notice Requirements**

Plaintiff also alleges that defendants' failure to provide sufficient notice to tenants of the availability of hardship exemptions violates the procedural due process requirements of the Fifth and Fourteenth Amendments. While the court agrees that due process notice and hearing requirements are implicated by the QHWRA, it finds no violation in the past or present practices of the MPHA.

Due process is implicated when the government acts in a manner that deprives an individual of a recognized liberty or property interest. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972). In analyzing due process claims, courts must begin with a two-step

inquiry, asking "first whether the plaintiffs have a protected interest at stake, and if so, what process is due." Bliek v. Palmer, 102 F.3d 1472, 1475 (8th Cir. 1997). In many cases, government-provided entitlements, such as publically subsidized housing, have been recognized as property interests within the scope of the due process clauses. See Wright v. Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 432 (1987). When, as here, government action threatens to deprive an individual of public housing, due process may be implicated.

Therefore, the court must determine what process is due. At its heart, due process consists of notice and an opportunity to be heard. See Mullane v. Central Hannover Bank & Trust Co., 339 U.S. 306, 313 (1950). In the present action, plaintiff focuses on the first requirement, challenging the adequacy of the past and present notice provided by MPHA prior to charging tenants minimum rent.[15] The Supreme Court has held that sufficient notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. It must also "permit adequate preparation for ... an

[15] Plaintiff does not appear to challenge the sufficiency of defendants' procedures for hearing tenant grievances. The regulations implementing QHWRA require that public housing agencies put in place meaningful grievance procedures that afford tenants the opportunity to contest unfavorable agency determinations. See 24 C.F.R. §§ 966.50 and 966.53(a).

impending hearing." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14 (1978).

The Eighth Circuit has interpreted Craft to require "informative notice ... to make the hearing to which plaintiffs are entitled meaningful."[16] Bliek, 102 F.3d at 1476. Other courts have similarly found that, where plaintiffs "have no way of being apprised of their legal rights--in fact, would not even know that their legal rights were implicated--except through the notices they receive from the government," adequate notice necessarily includes notice of such rights. Ellender v. Schweiker, 575 F. Supp. 590, 604 (D.C. N.Y. 1983). See also Aacen v. San Juan County Sheriff's Dept., 944 F.2d 691, 698 (10th Cir. 1991)(requiring that notices of execution and levy against property inform judgment debtors of available exemptions); Finberg v. Sullivan, 634 F.2d 50, 62 (3d Cir. 1980)(requiring that garnishment notices inform debtor of exemptions for social security benefits and an additional $300 under state law).[17] The court therefore agrees that the due process

---

[16] In Bliek, a state agency overseeing the food stamp program failed to inform program recipients who received more food stamps than allotted of their right to pursue a settlement with the agency. However, the notices of overissuance did inform recipients of their right to appeal the alleged overissuance. See Bliek, 102 F.3d at 1476.

[17] The court notes that each of the cases cited further examined adequate notice under the familiar three-part balancing test set out in Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Clearly, where, as is the case here, plaintiffs are poor, frequently without representation and stand to suffer a significant (continued...)

requirement of adequate notice dictates that MPHA must inform tenants of the availability of hardship exemptions before it charges them minimum rent.[18]

However, the court concludes that the requirement of adequate notice has been met in this case. QHWRA, and in particular, the hardship exemption, became law on October 21, 1998. In response, defendants placed a moratorium on issuing notices of termination and eviction actions until after it sent the first of three mass-mailed notices of availability of hardship exemptions to all minimum renters in January 1999. That notice included the following information:

> The Congress and the President of the United States have recently changed the law about paying minimum rent. Under the new law you may be exempt from paying minimum rent if you can show a long-term financial hardship. A long-term financial hardship may occur when:
>
> You or a member of your family has lost, or is waiting to find out if you will receive benefits from a government assistance program. This exemption may also apply to a lawful permanent alien.
>
> Your family would be evicted as a result of the minimum rent.

---

[17](...continued) deprivation, while the burden on the agency is relatively insignificant, the Mathews balance falls decidedly in favor of full notice.

[18] The Bliek court noted that adequate notice was particularly important where the affected parties were, as here, "low-income persons who live 'on the very margin of subsistence.'" Bliek, 102 F.3d at 1476 (citing Mathews, 424 U.S. at 340).

> The income of your family has decreased.
>
> A member of your family has passed away.
>
> Under the law MPHA may determine other exemptions.
>
> If you believe that you qualify for any of these exemptions or have any questions, please contact your Management Office.
>
> **Remember that any change in your income must be reported to the Management Office within five days.**

[MPHA Letter of January 8, 1999.] In Bliek, the Court of Appeals required that the notice given by the agency be "complete, stated in plain language, and reasonably calculated to afford the plaintiffs an opportunity to raise their objections to the state's proposed actions." Bliek, 102 F.3d at 1476. The court finds that those requirements are met in the January 8, 1999 mailing.

After issuing the mass mailing, MPHA resumed issuing notices of termination for non-payment of rent and began including a copy of the January hardship letter in each notice of termination. Since that time, MPHA has sent two additional mass mailings and made further procedural changes, including issuing notice of the availability of hardship exemptions with all notices of termination for non-payment of rent, to every tenant who becomes eligible for minimum rent, to every new tenant, to every tenant in the monthly rent reminder and to every tenant in the monthly rent statement. Because the court finds that the actions taken by defendants initially were sufficient to satisfy due process adequate notice

requirements, the subsequent additional procedures necessarily also comport with due process.

Plaintiff contends that the procedures implemented by MPHA upon enactment of QHWRA were inadequate as to both her and other public housing tenants. She further argues that questions of fact regarding the implementation of those procedures preclude summary judgment. Plaintiff alleges that she did not receive notice regarding the hardship exemption until October 2001. [Pl.'s Mem. in Supp. of Class Certification at 12-13.] When plaintiff became eligible for minimum rent in March 2001, she received a lease addendum from MPHA indicating that her rent had been reduced to $25. Plaintiff claims she was not informed at that time that she might qualify for a hardship exemption. [Pl.'s Mem. in Supp. of Class Certification at 12.] She also claims that when she failed to make the minimum payments, she received a notice of termination for non-payment for amounts due from March, April, May and June in the month of June. She alleges that there was not a notice of availability of hardship exemptions included with any of those communications. [Pl.'s Mem. in Supp. of Class Certification at 12.] Plaintiff also states that, faced with eventual eviction, she contacted MPHA seeking relief in late June or early July. Once again, she avers, she was not informed about the possibility of exemption from paying minimum rent. [Pl.'s Mem. in Supp. of Class Certification at 12-13.] Finally, she notes that, despite filing

an application for financial hardship in August and contrary to its purported policy, MPHA continued to charge her minimum rent in August and September and that her monthly minimum rental statements did not inform her of the exemption. [Pl.'s Mem. in Supp. of Class Certification at 14.] Plaintiff argues that each of these instances is an example of defendants failing to follow the notification policies they claim to have put in place since passage of QHWRA. She further contends that, because her version of the facts is contrary to defendants', material facts are in dispute.

On a motion for summary judgment, the court must take the allegations of the non-moving party as true and grant them every reasonable inference. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Further, the court is not to weigh the evidence, but rather determine whether there is admissible evidence in support of every necessary element of each claim or defense. See id. at 249. Nonetheless, only competent, admissible evidence can create a sufficient fact question to defeat summary judgment. See KLM Royal Dutch Airlines, Inc., 114 F.3d at 110-11. Self-serving affidavits and declarations made after the fact and directly contradicted by a party's own sworn testimony are not sufficiently competent to create a fact question. See id. (holding that parties cannot create sham issues of fact to avoid summary judgment).

After careful review of the entire record, files and proceedings in this matter, the court finds that the record does not support the allegations made in plaintiff's memoranda. While plaintiff's memoranda allege that she did not receive notice of the hardship exemption with the notice of termination for non-payment in April, when asked in deposition if she recalled receiving any attachments with the termination letter, she replied, "I -- I think I did. I'm not sure." [Henry Dep. at 99.] Similarly, when asked if she had spoken with anyone at MPHA about hardship exemptions, she agreed that she might have, but could not recall. [Henry Dep. at 132.] When asked more specifically if she had spoken with the property manager about hardship exemptions, she replied that she "thought so," and again, that she "probably did." [Henry Dep. at 132-33.] Eventually, plaintiff admitted that she simply could not remember whether she had received certain documents and not others. [Henry Dep. at 135.] It does not require an impermissible weighing of evidence to find that uncertainty of that degree does not suffice to create a fact question overcoming a motion for summary judgment. See First Nat'l Bank of Ariz. v. Cities Services. Co., 391 U.S. 253, 290 (1968)(holding that only "significant probative evidence" will defeat summary judgment motion).

Because the court finds no issues of material fact in controversy and that, as a matter of law, defendants' procedures were and are sufficient to meet the requirements of due process,

both generally and as applied in plaintiff's circumstances, summary judgment is appropriate and defendants' motion is granted.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1. Plaintiff's motion for class certification [Doc. No. 25] is denied.

2. Plaintiff's motion to stay summary judgment proceedings pursuant to Fed. R. Civ. P. 56(f) [Doc. No. 32] is denied.

3. Defendants' motion for summary judgment [Doc. No. 44] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 31, 2003

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.